NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 05-57552 |
| | : | |
| Monica I. Spence | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |
| Monica I. Spence | : | |
| | : | |
| Plaintiff | : | |
| | : | Adversary No. 06-2015 |
| vs. | : | |
| | : | |
| 33 Halsted Street Associates | : | |
| | : | **OPINION** |
| Defendant | : | Defendant's Motion for Summary |
| | | Judgment - Document #11 |
| | : | |

**APPEARANCES**

Seamus Boyle, L.L.C.
7 Mt. Bethel Road
Warren, NJ 07059
Attorney for Plaintiff

Neal M. Rubin
179 Avenue at the Commons
Suite 201
Shrewsbury, New Jersey 07702
Attorney for Defendant

**THE HONORABLE KATHRYN C. FERGUSON, USBJ**

**Memorandum Opinion**

On May 9, 2007, the Court took oral argument on a motion by 33 Halstead St. Assoc., LLC ("Halstead") for summary judgment on Plaintiff's complaint and Halstead's counterclaim. Alternatively, Halstead seeks partial summary judgment on the issue of consequential damages. Plaintiff/Debtor Monica Spence opposes summary judgment. This memorandum opinion resolves the summary judgment motion.

Summary judgment is not lightly granted. The Supreme Court has established that "summary judgment is appropriate only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Third Circuit has stated that whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." Tomalewski v. State Farm Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984).

**Findings of Undisputed Fact**

On November 1, 2002, Ms. Spence entered into a commercial lease with Halsted[1] to lease premises at 15-33 Halstead Street, East Orange, NJ ("Lease"). The original term of the Lease was five years. Under the terms of the Lease, Ms. Spence was required to pay $50,000 toward construction costs. The Lease provided that the first portion of the $50,000 would be returned to the tenant:

> $25,000 upon completion of 24 months provided that for 20 months of the 24 months rent payments have been made by the 10th business day of the month and account is current.

---

[1]RPM Development Group ("RPM") manages the property for Halsted.

*Lease* § 4.02.

Although the parties dispute the events surrounding Ms. Spence's request for return of the construction deposit, several facts are uncontested. A check dated December 20, 2004 in the amount of $25,000 payable to Ms. Spence was drawn on RPM's account. *Pignatello Cert. - Ex. E.* The remarks section of the check indicates it is the return of the construction deposit. By letter dated January 19, 2005, Ms. Spence's attorney informed RPM that Ms. Spence was terminating the Lease "effective immediately" because of a material breach of the Lease for failure to return the construction deposit. *Pignatello Cert. - Ex. F.*

## Conclusions of Law

I.  Breach of Contract

Ms. Spence's one count complaint alleges breach of contract. Under New Jersey law, to prevail on a breach of contract claim the movant must prove the following elements: (1) a valid contract existed; (2) defendant breached the contract; (3) plaintiff performed its obligations under the contract; and (4) plaintiff was damaged as a result of the breach. *See, e.g.,* Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543 (D.N.J. 2003); Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448 (D.N.J. 1999); *see also* Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985). A party bringing a claim for breach of contract has the burden of proving all elements of its cause of action, including damages. Cumberland County Improvement Authority v. GSP Recycling Co., Inc., 358 N.J. Super. 484 (App. Div. 2003). The parties do not dispute that a valid contract existed. The first disputed issue is whether Halstead breached the contract.

A. Halstead's breach of contract

Ms. Spence contends that Halsted breached the contract by failing to return her construction deposit upon the passage of 24 months of the Lease. Section 4.02 of the Lease sets forth three requirements that must be satisfied before the landlord must return the first $25,000 of the construction deposit: 1) "upon completion of 24 months"; 2) 20 of the 24 rent payments were timely; and 3) the account is current. Ms. Spence interprets the phrase "upon completion of 24 months" in § 4.02 to mean the refund was due upon the passage of 24 months time, not upon completion of 24 months of rental payments. As a result, Ms. Spence argues that all conditions of § 4.02 had been satisfied as of November 1, 2004, and she was entitled to her refund on that date.

Ms. Spence's strained interpretation of the Lease does not give due consideration to all of the contractual language. When § 4.02 is read as a whole, it becomes apparent that the phrase "upon completion of 24 months" referred to the tenant completing 24 months rent payments as opposed to the simple passage of 24 months on the calendar. Had the latter been intended, then the use of the word "completion" would be incongruous, as that word is not typically used to denote the passage of time. By contrast, the word "completion" is suitable when used to reference a tenant complying with its monthly rental obligation. Ms. Spence's interpretation also fails to take into account the phrase that follows, which provides that "for 20 months of the 24 months rent payments have been made by the 10th business day of the month." The most natural reading of that provision is that it covers a period in which 24 rental payments were due. Therefore, taking into account all of § 4.02 the Court must conclude that the refund was not due until the 24th payment was made. It is undisputed that the 24th payment was not made until November 10, 2004.

Even if the Court were to accept Ms. Spence's interpretation of the contractual language, that still would not make the refund due on November 1, 2004. Section 4.02 also requires that the account be current, and the only way to be sure of that is to allow all the payments to clear the bank.[2] The need for the landlord to allow all payments to clear the bank before deeming the account current is readily demonstrated by the fact that the check Ms. Spence tendered for payment on October 25, 2004 was returned for insufficient funds. Halstead redeposited the check on November 1, 2004 and then would need to wait up to five days for it to clear the bank. Therefore, the Court finds that even under Ms. Spence's reading of the Lease, the earliest that she could have been entitled to receive the refund was November 5, 2004.

The foregoing analysis belies Ms. Spence's argument that the Lease clearly provides when the refund was due. At best, the Lease provides the Court with a 10-day window from November 5, 2004 to November 15, 2004 in which Ms. Spence became eligible for a refund.[3] Beyond that, the Lease provides no guidance as to how soon after the tenant became eligible for a refund that the landlord had to provide it. New Jersey courts uniformly have applied the principle that "where no time is fixed for the performance of a contract, by implication a reasonable time was intended." Becker v. Sunrise at Elkridge, 226 N.J. Super. 119 (App. Div. 1988); Black Horse Lane Assoc., L.P.

---

[2] Halstead suggests that 10 days is a reasonable amount of time to allow for the check to clear. *Brief* at 5. That is inconsistent with the Expedited Funds Availability Act of 1987. Pursuant to that Act, even a check from a non-local bank should clear in 5 business days. 12 U.S.C. § 4002(b)(2).

[3] Halstead argues in passing that Ms. Spence never became eligible for the refund of the deposit because her payment on July 18, 2003 was 8 days late and did not include the $237.35 late fee. Moreover, Halstead's decision to return the $25,000 was discretionary and made in good faith. The Court finds that Halstead waived that argument based on its subsequent actions including Ms. Pignatello's oral promise of the refund to Ms. Spence on December 20, 2004.

v. Dow Chemical Corp., 228 F.3d 275 (3d Cir. 2000) (citing NJ cases applying the reasonable time standard).

Some guidance as to what the parties regarded as a reasonable time period can be gleaned from the Lease itself. First, in reference to the construction security deposit, the Lease provides that:

> The Tenant is required to pay $50,000, which will be applied to construction costs. The amount of $25,000 will be paid upon signing of the Lease. The amount of $15,000 will be paid by August 1, 2002. Failure to make this payment will result in the suspension of work until such time as this payments and the final installment is paid. If the delay in payment is greater than 30 days then the Landlord has the right to terminate the Lease and all funds deposited shall be forfeited as liquidated damages.

*Lease* § 4.02. While that section can provide guidance, it is not determinative because notably absent from § 4.02 is a parallel provision giving the tenant the right to terminate the Lease if the refund is not made within 30 days. That is important because it is a bedrock principle of contract interpretation that the court cannot write a better contract for the parties than they did for themselves. Schenck v. HJI Associates, 295 N.J. Super. 445 (App. Div. 1996) If the prompt return of the first $25,000 of the construction deposit was crucial to Ms. Spence at the time she entered into the Lease, she could have negotiated for similar protection. Since she did not do so, the court cannot impose it *ex post facto*. What the Court can deduce from that section, however, is that Halstead deemed its right to receive even a portion of the construction security deposit so important that it bargained for the right to deem the Lease terminated if a payment was more than 30 days late.

The Lease provides for two other time periods. In § 4.01 the Lease provides that the security deposit of $5,600 "shall be refunded to Lessee within forty-five (45) days after termination of the term of this Lease, provided Lessee shall have made all such payments and performed all covenants." With regard to rent, the Lease provides that "[i]f any payment is not received within

ten (10) business days of the date when due, Lessee shall pay a late charge of five percent (5%) ...." *Lease* § 1.02.  No evidence has been presented to the Court of what a typical time period is for the return of a deposit of this nature, but from the foregoing the Court can reasonably conclude that the parties contemplated that the return the construction security deposit would be within a similar time frame, i.e., within 10 to 45 days.

In this case, the construction deposit was not returned to Ms. Spence within 10 or even 30 days of her meeting all the requirements of § 4.02 of the Lease.  As previously noted, Ms. Spence became eligible for the refund between November 5th and November 15th, but RPM did not even cut the check until December 20, 2004.  So the earliest the refund even arguably became available to Ms. Spence was 35 - 45 days after she was eligible to receive it.  Complicating this analysis is the fact that Ms. Spence never actually received the check.  For summary judgment purposes the date written on the check cannot be accepted as incontrovertible proof that on December 20, 2004, or any date thereafter, the check was actually available to Ms. Spence.

Whether something occurred within a reasonable time is typically an issue for the finder of fact.  Mango v. Pierce-Coombs, 370 N.J. Super. 239, 256-57 (2004).  To defeat a motion for summary judgment, however, the party with the burden of proof must adduce evidence from which a reasonable jury could conclude that the moving party breached its contractual duty to complete a task within a reasonable time. Black Horse Lane Assoc. v. Dow Chem. Corp., 228 F.3d 275, 285 (3d Cir. 2000).

Ms. Spence proffered the following evidence regarding the tendering of the construction refund.  Between October 15, 2004 and December 2, 2004 Ms. Spence made six phone calls to RPM. *Monica Spence cert.* ¶ 8.  Ms. Spence was initially told by the receptionist that she would

need to speak to "Karen in accounting" regarding the refund. *Monica Spence cert.* ¶ 6. Ms. Spence received a return phone call from Karen in late October and Karen told her that she would research her entitlement to the refund. *Monica Spence cert.* ¶ 8. Ms. Spence sent an e-mail to Ellen Pignatello, Director of Office Operations for RPM, on December 6, 2004, asking for an update on the return of her deposit. *Monica Spence cert.* ¶ 10; *Exhibit D*. Finally, Ms. Spence states that she spoke to Ms. Pignatello on December 20, 2004, and Ms. Pignatello suggested that she come in and pick up the check on December 27th, but when she went to RPM's offices on that date they were closed.[4]  *Monica Spence cert.* ¶ 11, 12.

Viewing those facts in the light most favorable to Ms. Spence, the Court must conclude that Halstead did not take reasonable steps to ensure that Ms. Spence received her refund within a reasonable time. Without prompting from Ms. Spence, the construction deposit refund should have been mailed to Ms. Spence in sufficient time that it was received within 45 days. That was not done so, Halstead was in technical violation of the terms of the Lease and breached the contract. Thus, summary judgment must be denied on that issue

B. <u>Ms. Spence's obligation under the lease</u>

The third element that needs to be established on a breach of contract claim is whether the plaintiff performed its obligations under the contract. <u>Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.</u>, 275 F. Supp. 2d 543 (D.N.J. 2003). That issue is significant because Ms. Spence contends that she was entitled to cease performance of her obligations under the Lease as

---

[4] Ms. Pignatelli's certification states that she did not give Ms. Spence a specific date on which to pick up the check, but rather indicated that it would be available to Ms. Spence at the front desk whenever she chose to come in. *Pignatelli cert.* ¶ 10. But on a motion for summary judgment the court must view facts in favor of the non-moving party. <u>Tran v. Metropolitan Life Ins. Co.</u>, 408 F.3d 130, 135 (3d Cir. 2005).

a result of Halstead's material breach. A material breach of contract allows the aggrieved party to cancel the contract and recover damages for the breach. WILLISTON ON CONTRACTS § 63:3 (4th ed. 2002). If the breach is not material, however, the aggrieved party may not cancel the contract but may recover damages for the nonmaterial breach. Id.; Miller v. Mills Const., Inc., 352 F.3d 1166, 1172 (8th Cir. 2003); Murphy v. Implicito, 392 N.J. Super. 245 (App. Div. 2007)(whether a breach is material only bears on the quantum of damages). While the materiality of a breach of contract is normally an issue for the finder of fact, disposition on summary judgment is sometimes appropriate. *See, e.g.,* Mango v. Pierce-Coombs, 370 N.J. Super. 239, 257 (App. Div. 2004); Magnet Resources, Inc. v. Summit MRI, Inc., 318 N.J. Super. 275 (App. Div. 1998).

To determine whether breach of a contract is material a bankruptcy court must look to state law. *See, e.g.*, In re General DataComm Industries, Inc., 407 F.3d 616, 627 (3d Cir. 2005); Fineman v. Armstrong World Indus., 980 F.2d 171 (3d Cir.1992). Courts in New Jersey have defined a material breach as:

> Where a contract calls for a series of acts over a long term, a material breach may arise upon a single occurrence or consistent recurrences which tend to "defeat the purpose of the contract." ... In applying the test of materiality to such contracts a court should evaluate "the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be repeated."

Ra-Co Homes, L.L.C. v. O'Keefe, 2007 WL 621984 (N.J. Super. App. Div. 2007); Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 286 (App. Div.1998) (quoting Medivox Prods., Inc. v. Hoffmann-LaRoche, Inc., 107 N.J. Super. 47, 59 (Law Div.1969)). In other words, for a breach to be material it must go to the very root or essence of the contract. 23 WILLISTON ON CONTRACTS § 63:3 (4th ed. 2002).

The contract at issue in this case was for the lease of office space. The alleged material

breach of the contract was the failure to promptly provide a refund of a $25,000 construction deposit. The failure to return the deposit immediately did not interfere with the primary purpose of the contract. At no point was Ms. Spence denied access to the leased premises and no necessary services such as heat or electricity were terminated. In other words, at no point did Halstead interfere with Ms. Spence's quiet enjoyment of the leased premises. As a result, the Court cannot find that there was a material breach of the Lease that would justify Ms. Spence deeming the Lease terminated. While Ms. Spence may have been justified in withholding the rent for December 2005 and January 2006 and demanding a credit against her construction deposit refund, only a material breach would have justified deeming the Lease terminated and not making any future rental payments. As a leading treatise explains: "A party is not automatically excused from the future performance of contract obligations every time the other party commits a breach; if a breach is relatively minor and not of the essence, the plaintiff is still bound by the contract and may not abandon performance and obtain damages for a total breach by the defendant, though the nonbreaching party is entitled to damages caused even by the immaterial breach, albeit that these may be nominal in amount." 23 WILLISTON ON CONTRACTS § 63:3 (4th ed. 2002).

Since there was no material breach of the Lease, Ms. Spence was not entitled to terminate the Lease and be excused from future performance. Accordingly, the Court grants summary judgment in favor of Halstead on Count Two of its Counterclaim (failure to pay rent). In addition, since the Lease between the parties was not justifiably terminated the Court can also grant summary judgment in favor of Halstead on Count Four (attorney fees as provided for in the Lease) and Count Five (interest as provided for in the Lease) of its Counterclaim.

C. Damages

The final element a plaintiff must establish to prevail on a breach of contract claim is damages. Cumberland County Improvement Authority v. GSP Recycling Co., Inc., 358 N.J. Super. 484 (App. Div. 2003)(a party bringing a claim for breach of contract has the burden of proof to establish all elements of its cause of action, including damages).

Although the Court found that Halstead breached the Lease, the record is not sufficiently developed for the Court to conclude that Ms. Spence was damaged as a result. Ms. Spence argues that the failure to return the construction deposit promptly prevented her from entering into a sublease which in turn would have included the new subtenant assuming her lease on certain dental equipment. Ms. Spence maintains that "[a]s a result of the failure of the defendant to return the deposit, I was unable to continue paying rent and had to sell the dental equipment for $15,000, a loss of $64,000." *Spence cert.* ¶ 16.

Ms. Spence did not present a pending sublease or equipment assumption agreement to the Court. Therefore, the Court is forced to speculate that had the deposit been returned before the 45th day after she was eligible to receive it that Ms. Spence would have been able to enter into both a sublease and an assumption of the equipment rental before the $25,000 ran out. Such supposition may be enough to prevent the entry of summary judgment, but it is not enough to ultimately prevail on the damage claim.

Among the facts Ms. Spence will need to develop more fully at trial is why she not simply continue to store the dental equipment on the premises and seek to sublet even after she concluded that the refund was not forthcoming. Halstead did not initiate the summary dispossess action against her until after she sent a letter terminating the Lease, returned the keys, and vacated the premises.

Ms. Spence should also focus on why she did not seek any rental credit against the construction deposit or why her entitlement to the refund could not have been used as a defense to the summary dispossess action. The current record indicates that Ms. Spence had no communications with Halstead between her single attempt to pick up the check on December 27, 2004, and her January 19, 2005 letter indicating her intent to terminate the Lease.

Summary judgment will be denied on the issue of whether Ms. Spence suffered any damages as result of Halstead's breach. The Court will also deny Halstead's alternative request for summary judgment on the issue of consequential damages. Viewing the facts in the light most favorable to the non-movant the Court must allow the possibility that the damages sought are not consequential damages beyond the contemplation of the parties, but rather "a claim to recoup losses occasioned by defendant's pre-emption [sic] of plaintiff's efforts to re-let the premises." *Plaintiff Brief* at 10.

II. Halstead's Counterclaims

The Court has already addressed three of the five counterclaims asserted by Halstead. In addition, since the relief sought in Count One of Halstead's Counterclaim is subsumed within the relief granted on Count Two, the Court will dismiss Count One.

In Count Three of the Counterclaim, Halsted seeks to recoup the expenses it incurred in re-letting the premises. Since the Court has already found that the Lease was not properly terminated, and § 11.04 of the Lease allows the landlord to recoup such expenses, the Court can grant summary judgment in Halstead's favor. As far as the measure of damages, Ms. Spence raises several contested factual issues. Among the contested issues are: Ms. Spence's entitlement to a credit for the full construction deposit, any expenses the landlord saved as a result of not having to do the normal refitting had the lease ended on its original terms, whether all money expended on refitting

the premises was reasonable and necessary, and Halstead's good faith in negotiating the replacement lease. These contested issues preclude the Court from entering summary judgment as to the amount of damages.

## Conclusion

Summary judgment on the Complaint is granted in part and denied in part. On the Complaint, the parties will proceed to trial solely on the issue of damages. On Halstead's Counterclaim: 1) Count One is dismissed; 2) summary judgment is granted in favor of Halstead on Counts Two, Four and Five; and 3) summary judgment is granted in part and denied in part on Count Three. On Count Three the parties will proceed to trial solely on the issue of the amount of the damages.

Counsel for Halstead should submit a form of order in accordance with this opinion. The trial is currently scheduled for July 17, 2007, if the parties require an adjournment based on this ruling they should contact chambers. The parties should keep the Court apprised of any settlement negotiations.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: June 6, 2007